UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R. ALEXANDER ACOSTA,
SECRETARY OF LABOR,
UNITED STATES DEPARTMENT
OF LABOR,

          Plaintiff,

v.                                                Action No. 2:18cv226

MEDICAL STAFFING OF
AMERICA, LLC, et al.,

          Defendants.

## ORDER

On February 28, 2019, counsel contacted the Court due to a dispute that arose during the deposition of Alvaro Mazuera ("Mr. Mazuera"), an investigator with the United States Department of Labor, and the Court held a telephonic conference. *See* ECF No. 41. During Mr. Mazuera's deposition, counsel for defendants, Medical Staffing of America, LLC, doing business as Steadfast Medical Staffing, and Lisa Pitts (collectively "defendants"), sought the disclosure of the individuals who made statements to Mr. Mazuera during the course of his investigation, as well as the contents of those statements. Counsel for plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("the DOL") instructed Mr. Mazuera not to answer certain questions, citing the informants privilege.

Based on the information provided during the conference call, the Court applied the balancing test established in *Roviaro v. United States*, 353 U.S. 53 (1957), overruled the objection

in part, and ordered the disclosure of the full, unredacted statements, including the identities, of four individuals who were no longer affiliated with or employed by defendants at the time they were interviewed by Mr. Mazuera in 2017. ECF No. 41. The Court upheld the objection with respect to the three individuals who were affiliated with or employed by defendants at the time of Mr. Mazuera's interviews, and set an abbreviated briefing schedule for the DOL's challenge of the order. *Id.*

On March 4, 2019, the DOL filed a motion to vacate[1] the Order, with an affidavit in support. ECF Nos. 42, 48. Defendants opposed the motion to vacate, and the DOL replied. ECF Nos. 50, 51. For the reasons that follow, the motion to vacate is **GRANTED**.

The qualified privilege set out in *Roviaro*, 353 U.S. at 77, referred to as the informants privilege, applies in FLSA enforcement actions, and permits the Secretary to withhold the names of people who have given statements to FLSA investigators, as well as the statements themselves. *United States v. Hemphill*, 369 F.2d 539, 542 (4th Cir. 1966) ("The qualified privilege of withholding the names and statements of informants has been repeatedly and consistently upheld by the Courts."); *Brennan v. Engineered Prods., Inc.*, 506 F.2d 299, 302 (8th Cir. 1974) (collecting cases). The reason for the privilege is that enforcement of the FLSA is dependent on the cooperation of employees who are willing to give statements, and preserving their confidentiality assists the government in implementing the FLSA. *Wirtz v. B.A.C. Steel Prods., Inc.*, 312 F.2d 14, 16 (5th Cir. 1962) ("The average employee involved in this type of action is keenly aware of his dependence upon his employer's good will, not only to hold his job but also for the necessary job

---

[1] Inasmuch as the plaintiff filed a motion to vacate, rather than an objection to the Court's Order, the plaintiff's motion is construed as a motion for reconsideration.

2

references essential to employment elsewhere. Only by preserving their anonymity can the government obtain the information necessary to implement the law properly."). In determining whether the qualified privilege should apply, the public's interest in enforcement of the FLSA, and informant's right to anonymity, must be balanced against the defendants' need to prepare for trial. *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 305 (5th Cir. 1972).

The DOL asserts that its interests in protecting the identities of informants far outweighs defendants need for the identities. ECF No. 43 at 3. The privilege shields informants from retaliation, allows candid discussions, and facilitates cooperation. *Id.* at 4. The DOL argues the privilege applies to former as well as current employees, because knowledge of informants' identities could affect: (1) references given by a defendant employer to an informant's prospective new employer, (2) the informant's attempt to seek reemployment with a defendant, and (3) the informant's status with a new employer who learns the informant had cooperated with the DOL regarding a prior employer. *Id.* at 7–8 (citing *Charles Martin*, 459 F.2d at 305–06).

The DOL asserts defendants can ascertain informants' job titles, duties and responsibilities, hiring and placement process, and the relationship between informants and defendants from the redacted records provided, and have no need to know the identity of the informants. *Id.* at 6. Further, the DOL notes that defendants have the list of 84 individuals, the "Schedule A workers," who are potential witnesses in the case, and about whom the defendants already possess substantial information due to their prior working relationship. *Id.* at 12. The DOL further asserts that it will disclose the names of those informants who will testify at trial on April 22, 2019, in accordance with the Court's amended Rule 16(b) scheduling order, as well as the unredacted statements the informants provided to the DOL. ECF No. 43 at 3, 15; ECF No. 50-1 at 3 (DOL represented an

3

"intention to produce unredacted statements prior to trial"); ECF No. 50-1 at 11 (DOL stated that "once we make a determination that we are going to rely on those statements, those are the statements that we would produce prior to trial and the names that we would produce"). The DOL argues that the informants privilege applies to protect the identities of those informants who will be witnesses until that time, and protects all other informants indefinitely. *Id.* at 13–14.

In response, defendants note that the classification of workers as independent contractors or employees, the ultimate issue in this case, depends on a six-factor economic realities test that is reliant upon the surrounding facts. ECF No. 50 at 6 (citing *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016)). Defendants assert that, according to Investigator Mazuera, "the final determination that Defendants allegedly misclassified these workers was entirely based upon witness statements." *Id.* at 7. Defendants argue that the "witness statements were facilitated by a phone interview with Mr. Mazuera and written in his handwriting. Defendants have reason to believe the investigator drafted these workers' statements in a prejudicial way by using 'buzzwords' or leading questions and statements." *Id.* As a result, defendants "have an interest in determining the context and veracity of these statements in light of the potential prejudicial manner in which they were presented." *Id.* at 7–8. Defendants further argue "there is nothing suspicious or 'harassing' about Defendants contacting these individuals regarding the statements provided to investigator Mazuera." *Id.* at 9. Lastly, defendants note that discovery has now closed and the DOL's interest in preserving the privilege must give way to defendants' opportunity to prepare their defense. *Id.* at 10.

Here, the defendants know the identities of the 84 workers at issue, which have been listed in schedule A to the complaint as of May 2, 2018. ECF No. 1-2. Defendants have not indicated

4

that they attempted to interview any of these workers or had any difficulty with doing so.[2] In addition, the DOL has produced redacted copies of the statements taken from several witnesses. ECF No. 43-4 (six interview statements taken from licensed practical nurses that appear to have redacted only identifying information). Having now had an opportunity to review the redacted statements for six licensed practical nurses, ECF No. 43-4, the Court is satisfied that the DOL provided defendants with the pertinent factual information contained therein, other than information that could be used to identify the informants.[3] Further, the reasons defendants have proffered for needing the identifying information go to the need to impeach potential witnesses, including investigator Mazuera, which can be adequately addressed by the DOL's anticipated disclosure of witnesses and any related statements shortly before trial. *Brennan*, 506 F.2d at 304 (holding disclosure of proposed government witnesses "for impeachment purposes should be handled at the pretrial stage," and finding disclosure five to ten days before trial was reasonable); *cf. Hemphill*, 369 F.2d at 542 (noting "[t]he qualified privilege must give way shortly before and during the trial of an actual enforcement proceeding to the extent that fairness requires the Secretary to furnish lists of prospective witnesses and written statements obtained from them."); ECF No. 50-1 at 3, 11.

---

[2] During the conference call, counsel for defendant indicated, "I would like to be able to efficiently find these people and interview them myself because I could . . . in theory over the next few weeks . . . [find] all eighty-four people and talk to them." ECF No. 50-1 at 18–19.

[3] During the conference call, the Court was concerned that counsel for defendant had not received the factual information contained in these statements, based on counsel's description of a sample witness statement, "everything in the entire [document] is blacked out other than the date, the fact that the interview took place at the establishment, the name of the employer. . . ." ECF No. 50-1 at 26, 39. The statement counsel was referring to does not appear to be from one of the licensed practical nurses listed in Schedule A. *See* ECF No. 50-3.

5

The Court FINDS that the DOL's need for confidentiality outweighs the defendants' need for the identities of those who gave statements, in light of the fact that the redacted statements have been produced, and the identities of the informants testifying at trial will soon be disclosed to defendants. Accordingly, the motion to vacate is **GRANTED**.

The Clerk shall send a copy of this Order to all counsel of record.

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
March 26, 2019