**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL STAFFING OF AMERICA, LLC, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:18-cv-226<br>) Case No. 2:19-cv-00475 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ADVERSE INFERENCE AGAINST DEFENDANTS' GOOD FAITH AFFIRMATIVE DEFENSE OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE REGARDING ADVICE RECEIVED FROM ATTORNEY ARLENE KLINEDINST**

Pursuant to Fed. R. Evid. 403 and 501, Plaintiff Eugene Scalia, Secretary of Labor, U.S. Department of Labor ("Plaintiff" or the "Secretary"), respectfully requests the Court draw an adverse inference against Defendants good faith defense or, alternatively, exclude from trial any and all evidence regarding any advice or communication Defendants received from attorney Arlene Klinedinst ("Attorney Klinedinst"). Defendants Medical Staffing of America, LLC, d/b/a/ Steadfast Medical Staffing ("Steadfast") and Lisa Pitts (collectively "Defendants") intend to rely on alleged advice they received from Attorney Klinedinst when arguing they violated the Fair Labor Standards Act ("FLSA" or "Act") in good faith. However, Defendants have precluded Plaintiff from obtaining discovery related to that same advice from Attorney Klinedinst. Specifically, Defendants redacted portions of two emails from Attorney Klinedinst that specifically address Defendants' decision to continue misclassifying nurses as independent contractors and to refrain from paying them overtime. Exhibits A and B. Defendants also

asserted the attorney-client privilege at the Secretary's deposition of Attorney Klinedinst when the Secretary asked about the specific advice Attorney Klinedinst provided. Exhibit C. In doing so, Defendants have unfairly denied the Secretary any meaningful opportunity to challenge – or at the very least inquire into the scope of – Defendants' good faith affirmative defense under 29 U.S.C. § 260.

Defendants waived the attorney-client privilege when they attempted to rely on advice received from Attorney Klinedinst in asserting a defense under 29 U.S.C. § 260. Despite the unambiguous case law on this issue, Defendants repeatedly asserted the privilege and directed Attorney Klinedinst not to answer, rendering an available witness within their control wholly unavailable to the Secretary. Defendants' actions were contrary to law and warrant an adverse inference against their good faith affirmative defense. Moreover, because this advice related to Defendants' decision to continue violating the FLSA after Plaintiff initiated *Steadfast I*, Plaintiff believes Attorney Klinedinst's purported advice also speaks to Plaintiff's willfulness claim against Defendants in *Steadfast II*. In other words, Plaintiff anticipates the information Defendants have withheld in discovery goes to the issue of whether Defendants knew of their obligations under the FLSA and still made the decision to misclassify employees as independent contractors and to refuse to pay them overtime. Accordingly, Plaintiff requests the Court apply an adverse inference against Defendants that Attorney Klinedinst offered advice to Defendants that: (1) they were obligated to pay all of the nurses listed in the *Steadfast I and II* Schedule As overtime under Section 7 of the FLSA, and (2) Defendant's classification of nurses listed in the Schedule A attached to the *Steadfast I and II* Complaints as independent contractors was unlawful, as said nurses were employees covered under the FLSA.

In the alternative, should the Court refrain from applying the above-requested adverse inferences, or any other adverse inference against Defendants, Plaintiff requests the Court preclude Defendants from introducing evidence at trial concerning any advice or communication Defendants received from Attorney Klinedinst as allowing the admission of testimony and exhibits related to advice received from Attorney Klinedinst will unfairly prejudice the Secretary. *See* Fed. R. Evid. 403.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2019, Plaintiff filed this Fair Labor Standards Act ("FLSA" or "Act") overtime and recordkeeping case against Defendants Medical Staffing of America, LLC, d/b/a Steadfast Medical Staffing ("Steadfast") and Lisa Ann Pitts (collectively "Defendants"). *Steadfast II*, ECF No. 1. In that Complaint, Plaintiff alleges Defendants willful violated the FLSA between June 10, 2017, and present by failing to pay employees the overtime premium rate for hours worked over 40 in a workweek. On January 10, 2020, the Court issued an order consolidating *Steadfast II* (Case No. 2:19-cv-475), with existing litigation in *Steadfast I* (Case No. 2:18-cv-226). *Steadfast II*, ECF No. 22. Discovery between the parties commenced on January 22, 2020. ECF No. 175.

On January 29, 2020, Plaintiff propounded his Second Requests for Admissions, Second Set of Interrogatories, and Second Request for Production of Documents on Defendants covering the statutory period in *Steadfast II*. In email correspondence received on Saturday, February 29, 2020, defense counsel informed Plaintiff they intended to rely on advice received from Attorney Klinedinst and Attorney John Bredehoft, when asserting Defendants violated the FLSA in good faith in *Steadfast II*. In their March 2, 2020 document production, Defendants produced two partially redacted emails from Attorney Klinedinst, one of which included a memorandum

providing research on the economic realities test. Exhibits A and B. Notably, neither the memo, nor any part of the two emails that were unredacted, indicated Attorney Klinedinst made a determination as to whether Steadfast nurses were properly classified as independent contractors.

Plaintiff served Attorney Klinedinst with a subpoena (via process server) and noticed her for deposition on March 11, 2020. During the deposition, Defendants' counsel indicated on the record that Defendants did not waive attorney-client privilege with respect to Attorney Klinedinst's testimony outside of the unredacted content of her emails to Defendant Pitts. In line with that statement, defense counsel objected to all questions posed by Plaintiff regarding advice Attorney Klinedinst provided concerning the FLSA, including advice Attorney Klinedinst provided regarding the classification of nurses as independent contractors. When Defendants continued to assert the privilege and, thus, precluded Attorney Klinedinst from answering, Plaintiff sought intervention from the Court. Magistrate Judge Leonard conducted a telephonic conference. Judge Leonard acknowledged Defendants' right not to waive attorney-client privilege but indicated that, by asserting the privilege, Defendants potentially barred their good faith affirmative defense. Judge Leonard further noted that the preclusion of such testimony was the exact behavior Plaintiff could raise in a motion *in limine*. Despite the Court's guidance, Defendants continued to raise attorney-client privilege objections.

Defendants' conduct at the remaining depositions during the week of March 9, 2020 demonstrates Defendants' selective waiver of the attorney-client privilege. It further reflects Defendants' knowledge they had no legal basis to assert the privilege with respect to legal advice on which they intend to rely in asserting the good faith affirmative defense. On March 13, 2020, Plaintiff deposed John Bredehoft, yet another attorney from whom Defendants contend they sought FLSA advice. Despite Defendants' indication they intended to rely on the purported

advice received from Attorney Bredehoft in asserting their good faith affirmative defense,

Defendants did not raise an attorney-client privilege objection at his deposition.[1]

## II.    LAW AND ARGUMENT

### A.  Defendants Waived the Attorney-Client Privilege when They Asserted the Good Faith Affirmative Defense

"[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Circ. 1991) (citing *In re von Bulow,* 828 F.2d 94,103 (2d Cir.1987)). Privilege, in general, is governed by the common law as interpreted by United States courts in light of reason and experience. Fed. R. Evid. 501. The attorney-client privilege, however, is not sacrosanct. *Scott v. Chipotle Mexican Grill, Inc*., 67 F. Supp. 3d 607 (S.D.N.Y. 2014) (citing *Bilzerian*, 926 F.2d at 1292). Indeed, once a party puts its attorney-client communication at issue, the privilege is waived. The Fourth Circuit in *In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003), held that a waiver of the attorney-client privilege occurred where a defendant said "that he had acted in a particular way relying on the legal advice of an attorney." The waiver extends to all communications related to the matter in question. *Id.* at 337; *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982); *see also United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va. 2012) ("[Implied] waiver may occur if the client places the attorney-client relationship in issue, for example, by affirmatively invoking a defense of good faith reliance on advice of counsel.").

Similarly, in *Chipotle Mexican Grill, Inc.,* the court held when an attorney seeks to prove its good faith affirmative defense under the FLSA by relying on legal advice, that employer has

---

[1] Please note that Plaintiff has filed a Motion to Overrule Objections and to Compel Defendants seeking, among other things, an order compelling Defendants to produce all documents related to communications or advice from Attorney John Bredehoft, Attorney Klinedinst and Attorney Wanda Cooper related to Defendants' FLSA compliance. Defendants inexplicably only produced 2 total documents from these three attorneys, one of which was redacted.

waived the privilege. 67 F. Supp. 3d at 611.[2] The rationale for the waiver "is premised on the unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *Id*. (quoting *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003)); *see also Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (the defendant's attorney was required to submit to deposition in a FLSA matter because the attorney-client privilege was implicitly waived when a portion of the privileged communication was disclosed for a good faith defense).  In *Chipotle Mexican Grill, Inc.,* the employer filed a motion for protective order to prohibit discovery regarding its communications with its attorney. 67 F. Supp. 3d at 609. Notwithstanding, the employer sought to rely on advice received from that attorney while asserting good faith affirmative defenses under 29 U.S.C. §§ 259, 260, and defending against a claim that the employer willfully violated the Act. *Id*. The court held that if the employer invoked an affirmative defense reliant on the advice of counsel, it could not also deny the plaintiff the opportunity to evaluate the validity of that affirmative defense under the guise of privilege. *Id*. The court deduced that the legal advice the employer received could demonstrate the falsity of Chipotle's good faith defense and that the plaintiffs were "entitled to know if [the defendant] ignored counsel's advice." *Id*. at 616 (quoting *Leviton Mfg. Co. v. Greenberg Traurig LLP,* 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec.6, 2010)).

Here, as was the case in *Chipotle Mexican Grill, Inc.*, Defendants seek to rely on legal advice as the basis of their good faith defense. Plaintiff also suspects Defendants intend to rely on legal advice received from Attorney Klinedinst in defending against Plaintiff's *Steadfast II*

---

[2] The court termed this as the "at-issue waiver doctrine as articulated in [*United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)]." *Id*. at 610.

willfulness claim. In so doing, Defendants put their communications with Attorney Klinedinst at issue. The law – and fairness – dictate that Defendants cannot rely on that advice and then assert a privilege that denies Plaintiff access to the information necessary to challenge that defense.

Defendants produced a total of three documents in support of their good faith affirmative defense, all of which were from Attorney Klinedinst. The first document was a partially redacted February 7, 2018 email they received regarding the Department of Labor's investigation. Exhibit A. The second document was a partially redacted March 12, 2018 email they received regarding the economic realities test and its potential application to Steadfast. Exhibit B. Attached to that redacted email was the third document, a brief memorandum of law reciting the economic realities test with no analysis, recommendation, or conclusion as to the applicability of the test to Steadfast nurses. The documents set forth in Exhibit B constitute communications to Defendants regarding the economic realities test, i.e., the test Defendants have to satisfy to prove *Steadfast II* nurses are independent contractors and, therefore, not entitled to overtime. Defendants, however, redacted two-thirds of the March 12, 2018 email from Attorney Klinedinst and the Secretary can only wonder what information Defendants have actively withheld through that redaction.

The analysis with respect to these documents is not limited just to the advice Defendants received from Attorney Klinedinst. To meet their burden of proof under 29 U.S.C. § 260, Defendants must not only show they took active steps to ascertain the dictates of the FLSA, e.g., sought legal advice, but they also must show they took steps to comply with that advice. *Lockwood v. Prince George's Cty., Md*., 58 F. Supp. 2d 651, 657 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000); *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir.1997). By redacting this document, Defendants are not merely eliminating Plaintiff's opportunity to challenge the scope of the advice Attorney Klinedinst provided, but they also are

precluding Plaintiff from determining whether Defendants actually complied with Attorney Klinedinst's advice. In other words, by withholding what advice Attorney Klinedinst provided, Defendants are barring Plaintiffs from challenging any evidence they offer in support of the subjective prong of the good faith affirmative defense.

Defendants' conduct does not end there. They also repeatedly asserted the attorney-client privilege at Attorney Klinedinst's deposition, precluding her from answering questions about the advice she provided to Defendants.

> Q: And for what purpose were you retained by Steadfast?
>
> MR. DOZIER[3]: Okay. *I'm going to object to that unless counsel for Steadfast waives it* or makes a proffer on that.
>
> MR. SIEGRIST: *And I join in on the objection.* Yeah. *We were going to rely on the proffer for the scope of the representation.* And, again, the scope was the representation of Steadfast following the completion of the wage and hour audit conducted by the Department Of Labor Wage and Hour Division.
>
> . . . .
>
> Q: [A] proffer does not limit the scope of the inquiries that we're making and absent an objection as to privilege. I'd ask that she respond to the inquiry. If you could, please, define the scope of your representation?
>
> MR. DOZIER: Well, *I am going to renew the objection on privilege.* I think the scope of representation is a – is privileged, and *I will defer to the defendants' counsel on what, if any, of that privilege has been waived.*

Transcript of Arlene Klinedinst Deposition ("Klinedinst Tr."), 15:23-16:11, 17:14-18:2 (emphasis added).

> Q: At the firm, were there any other attorneys beside yourself that assisted regarding the scope of representation?
>
> A: … Michael Pierce who was assisted.
>
> . . . .

---

[3] William Dozier represented Attorney Klinedinst at her deposition. Aaron Siegrist represented Defendants at the deposition.

Q: And what was Mr. Pierce's role with respect to the representation?

MR. DOZIER: I object to privilege on that.

MR. SIEGRIST: Same objection.

*Id*. at 33:25-34:20.

Q: Okay. Do you have any written or electronic communications with Mrs. Pitts on behalf of Steadfast?

MR. DOZIER: Objection. Attorney-client privilege. Communications.

MR. SIEGRIST: And defendants joins in the objection.

Q: Do you have any written or electronic communications with Mrs. Pitts on behalf of Steadfast regarding the classification of the nurses that she provided compensation to?

MR. DOZIER: Objection. Attorney-client privilege. Communications.

MR. SIEGRIST: Defendants joins the objection.

*Id*. at 39:5-20.

Q: Did you provide advice to Lisa Pitts regarding her classification of Steadfast nurses?

MR. SIEGRIST: Objection.

MR. DOZIER: Objection. Attorney-client privilege. Communications.

Q: On what topics did give Mrs. Pitts advice regarding her classification of Steadfast nurses?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants joins.

Q: When did you provide advice to Mrs. Pitts regarding the audit that the Department of Labor completed?

MR. DOZIER: I'm going to – same objection.

MR. SIEGRIST: And defendant joins the objection.

*Id*. at 44:20-45:13.

Q: Directing your attention to 2, which is the memo.[4] It's [sic] Bates stamp Steadfast 6th. Starting with Bates number 01704. Tell me about this document. The next page.

. . . .

A: It is an internal research memo.

Q: Okay. And at the top is the associate's name that you mentioned before, Mr. Pierce. And you indicated in your earlier testimony that he assisted in the preparation of this memo, correct?

A: Yes.

Q: What did he do?

MR. SIEGRIST: Objection.

MR. DOZIER: Attorney – objection Attorney work product.

MR. SIEGRIST: Same objection. It's attorney work product and attorney-client privilege.

Q: Mrs. Klinedinst, what did you do in terms of preparation of this memo?

MR. DOZIER: Same objection. Work product doctrine.

MR. SIEGRIST: And defendant state those objections as well.

Q: I understand that this is a memo regarding recent cases on independent contractors [sic] status as indicated on the reline of this memo. Do you see that?

MR. SIEGRIST: Objection. Attorney-client privilege. Also, the document speaks for itself.

*Id*. at 48:11-50:19

Q: Okay. Besides this memo, were there any other memos provided to Mrs. Pitts for Steadfast regarding the completion of the audit by the Department of Labor?

MR. DOZIER: Objection. Attorney-client privilege and work product doctrine.

MR. SIEGRIST: And defendants join in those objections.

. . . .

---

[4] The memo at issue is one of the three documents Defendants produced in discovery related to Attorney Klinedinst's purported advice. *See* Exhibit B.

Q: Okay. Besides Klinedinst 2, were there any other memos regarding -- any other memos, written communications provided to Mrs. Pitts and Steadfast regarding independent contractor status.

MR. DOZIER: I will object to that on attorney-client privilege and work product.

MR. SIEGRIST: And defendants join in those objections.

Q: Did Mrs. Pitts indicate why she was seeking advice on independent contractor status?

MR. DOZIER: I will object on attorney-client privilege. I'm not sure if that misstates facts, but I'll object on attorney-client privilege and work product -- or attorney-client privilege only.

MR. SIEGRIST: And I'll object on the same grounds as well. And also object to the form to the extent that it misstates evidence that is in the record.

Q: … Why was this memo regarding recent cases on independent contractor cases provided to Mrs. Pitts?

MR. DOZIER: Objection. Attorney-client privilege and work product.

MR. SIEGRIST: Defendants join those in objections.

Q: What steps did you take to ensure that you were fully prepared to offer advice on recent cases on independent contractor status?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants also object on the grounds of attorney-client privilege and work product as well.

. . . .

Q: How did Mrs. Pitts respond to the advice that was provided as detailed in Exhibit 2?

MR. DOZIER: Objection. Attorney-client privilege. Communications.

MR. SIEGRIST: Defendants join that objection.

Q: To the best of your knowledge, did Mrs. Pitts comply with the advice as detailed within Exhibit 2?

MR. DOZIER: Same objection.

MR. SIEGRIST: And defendants join in that objection.

Q: If Mrs. Pitts did not comply with that advice, would you know?

MR. DOZIER: Objection. Same objection.

MR. SIEGRIST: Objection. Attorney-client privilege. And objection. Calls for speculation. Objection to form and foundation.

*Id*. at 54:18-57:25.

Q: Are you aware of whether Mrs. Pitts implemented any of the recommendations that you provided as detailed in Exhibit 2?

MR. DOZIER: Objection. attorney-client [sic] privilege. Communications.

MR. SIEGRIST: Same objection

*Id*. at 58:17-22.

Q: Did you ever give Mrs. Pitts advice regarding Steadfast's compliance with the FLSA.

. . . .

MR. DOZIER: Objection. Attorney-client privilege. Communications.

MR. SIEGRIST: Same objections from the defendant.

Q: When did you give Mrs. Pitts advice regarding Steadfast's compliance with the FLSA?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendant also state those objections.

Q: Was the advice electronic, written or verbal if, indeed, you provided advice regarding Mrs. Pitts' compliance with the FLSA?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join in that objection.

Q: Do you have a copy of any advice that you may have provided to Mrs. Pitts regarding her compliance -- her, being the business, Steadfast's compliance with the FLSA?

MR. DOZIER: Same objection.

MR. SIEGRIST: And defendants join in that objection.

Q: Did Mrs. Pitts expressly request advice regarding the compliance with the FLSA?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join in that objection.

. . . .

Q: What information did Mrs. Pitts provide to you when seeking advice regarding classification of Steadfast nurses and employees?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join that objection.

Q: What advice -- what information did Mrs. Pitts provide to you when seeking whether her practices were in compliance with the FLSA?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join that objection.

. . . .

Q: Did you interview anyone at Steadfast before offering any advice?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join the objection.

. . . .

Q: Did you interview anyone at Steadfast before offering any advice on the business' compliance with FLSA?

MR. DOZIER: Same objection. Attorney-client work product -- I'm sorry, attorney-client privilege and work product.

MR. SIEGRIST: Defendants join those objections.

*Id*. at 59:8-64:2.

Q: Did you interview Mrs. Pitts regarding her policies, practices and procedures regarding classification of employees at Steadfast?

MR. DOZIER: Same objections.

MR. SIEGRIST: Defendants join those objections.

Q: Did you interview Mrs. Pitts regarding her policies, practices and procedures to assure compliance with the FLSA?

MR. DOZIER: Same objections.

MR. SIEGRIST: Defendants join those objections.

*Id*. at 75:17-76:4.

Q: What documents did you review prior to and during your preparation of the March 12th memo?

MR. DOZIER: Same objections.

MR. SIEGRIST: Defendants join those objections.

*Id*. at 77:8-13.

Q: Did you conduct any type of audit before offering advice regarding Steadfast's classification of nurses as independent contractors?

MR. DOZIER: Same objections.

MR. SIEGRIST: Defendants join those objections.

. . . .

Q: Did you conduct any other type of fact investigation before offering FLSA advice?

MR. DOZIER: Same objection.

MR. SIEGRIST: Defendants join in those objections.

. . . .

Q: Did you conduct any research in response to the request for FLSA advice?

MR. DOZIER: Same objections.

MR. SIEGRIST: Same objections from the defendants.

*Id*. at 78:16-80:16.

Q: Beyond the advice detailed in the March 12th memorandum, was Mrs. Pitts provided any other advice related to her classification of Steadfast nurses or employees as independent contractors?

MR. DOZIER: Continuing objections.

14

MR. SIEGRIST: Defendants joins in the objections.

*Id*. at 125:11-18.

In short, Defendants barred Plaintiff from asking questions about what advice Attorney Klinedinst gave Defendants, what steps she took before giving advice to Defendants, what information Attorney Klinedinst had regarding Defendants at the time she gave the advice, and whether Defendants complied with that advice. Defendants even objected when Plaintiff's counsel asked questions to determine whether the privilege applied, i.e., whether a third party was present during the communications. Defendants objected when Plaintiff merely asked whether communications between Attorney Klinedinst and Defendants were verbal, written or electronic, and the dates of those communications. The privilege clearly does not apply to these questions. The privilege also does not apply to communications between an attorney and independent contractors or non-management employees, neither of whom can speak for Defendants. Yet Defendants objected to questions about communications between Attorney Klinedinst and those individuals, as well.

Defendants cannot use the attorney-client privilege as a sword to meet their burden under 29 U.S.C. § 260 and as a shield to prevent the Secretary from probing the legal advice they are relying upon in support of this defense.  The Secretary has the right evaluate the validity of Defendants good faith affirmative defense. Defendants have not produced a reasonable rationale for redacting Attorney Klinedinst's email and preventing Attorney Klinedinst from answering the Secretary's questions during deposition. Nor have they offered any explanation or justification for precluding Plaintiff from learning whether Defendants ignored or complied with Attorney Klinedinst's advice. Indeed, as noted by Magistrate Judge Leonard when counsel called him during Attorney Klinedinst's deposition:

15

I'm hard-press[ed] to evaluate how any advice that could be given could come into evidence when the parties purports to offer that advice has blocked the other party from finding out upon what that advice was based, which to me sounds like a right matter for a motion *in limine*. … But be that as it may, at this juncture I'm not going to order that the attorney-client privilege be breached in this deposition. But I'll tell you, Mr. Siegrist, ***I'm hard-press[ed] to see how this defense under these circumstances is going to allow you to turn around and put on evidence that you have affirmatively blocked the plaintiff from obtaining. So you do so at your own risk***.

Klinedinst Tr. at 109:13-110:14 (emphasis added).

## B. An Adverse Inference Is Warranted against Defendants for Obstructing Access to Relevant Evidence within Its Control because All Things Are Presumed against a Despoiler or Wrongdoer.

Drawing an adverse inference against a party who fails to come forward with relevant evidence within its control is a reasonable and well-recognized evidentiary rule. *Norfolk and Western Ry. Co. v. Transportation Communications Intern. Union*, 17 F.3d 696, 702 (4th Cir. 1994). Courts in this Circuit have consistently maintained that spoliators should not be able to benefit from their wrongdoing. This policy is captured in the maxim *omnia presumuntur contra spoliatorem*, which means "all things are presumed against a despoiler or wrongdoer." *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 284 (E.D. Va. 2001). The loss of evidence leads to manifest unfairness and injustice because it increases the risk of erroneous decision on the merits of the underlying cause and can increase the costs of litigation. *Id.* at 285.

The purpose of applying an adverse inference against a party is to level the evidentiary playing field and for sanctioning improper conduct, which is within the discretion of the court. *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995) (citing *Welsh v. United States,* 844 F.2d 1239, 1246 (6th Cir.1988); *Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 218 (1st Cir. 1982)). This practice applies equally to documents and witnesses as the Fourth Circuit stated:

16

> To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence. Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that "the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party."

*Id*. (citing *Wigmore on Evidence,* § 285 at 192 (Chadbourn rev. 1979)).

This Circuit has not shied away from applying adverse inference when a party renders a witness unavailable, as "[i]t is well settled that the unexplained failure of a party litigant to call a material witness to give evidence in his behalf supports an inference that such witness, if permitted to testify, would testify against the interests of the party failing to present this testimony." *Blow v. Compagnie Maritime Belge (Lloyd Royal) S. A*., 395 F.2d 74, 79 (4th Cir. 1968) (citing *Southern Cross Steamship Co. v. Firipis*, 285 F.2d 651, 659 (4th Cir. 1960)). This application also applies to a situation in which a party fails to make an individual within their control available to testify. Under such circumstances, the fact finder could properly believe that such evidence would not support that party's theory. *See, e.g., Travelers Ins. Co. v. Collins*, 484 F. Supp. 196, 198 (E.D. Va. 1980) (reasoning that a trier of fact is justified in saying that in proving a fact that is within the control of a party and the party fails to offer that proof, that it may be assumed that the proof was not there, or that if it were there, it was contrary to the interest of the party).

Adverse inference does not require a showing of bad faith. *Vodusek,* 71 F.3d at 156. Indeed, an adverse inference simply requires a showing that the wrongdoer knew that the evidence in question is relevant to some issue at trial. *Id*. For example, in *Transportation Communications Intern. Union*, the court upheld an arbitrator's adverse inference against defendants when they failed to submit to a joint records check. 17 F.3d at 699. The court

concluded that since the defendants first raised the issue, they cannot rely on the records of the issue they raised and at the same time refuse to divulge the contents of the records. *Id.*

While there is no set formula courts universally apply when determining whether an adverse inference is warranted, this Court has considered the following factors: (1) the degree of fault of the wrongdoer; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Trigon Ins. Co.,* 204 F.R.D. at 288 (citing *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76 (3d Cir. 1994)).

Here, Attorney's Klinedinst's lawyer at the deposition repeatedly asserted that his client could not answer until Defendants waived the privilege:

> [I]t's my understanding that *Mrs. Klinedinst cannot testify as to any privileged information without the waiver of privilege by the client.* In our case, the former client. Mr. Siegrist represents the former client, and he stated the bounds of her -- of her waiver. As I understand, sitting here today, her waiver is to the documents which were, I guess, provided to you in redacted form. They are relying upon the advice of counsel defense. *So as much as I would like to tell you precisely what Mrs. Klinedinst's representation was, I can't. I can't let her do that.*

Klinedinst Tr. 21:3-17 (emphasis added). Thus, Defendants had total control over restricting the scope of Attorney Klinedinst's testimony. Defendants also had complete control over the content of the emails they redacted based on privilege. Exhibits A and B. Moreover, that testimony and those emails are unquestionably relevant to a paramount issue at trial, i.e. Defendants' good faith affirmative defense. In short, Defendants, and Defendants alone, are at fault for withholding relevant evidence from the Secretary that directly concerns an affirmative defense Defendants intend to raise at trial. The fact that both Plaintiff's counsel and Magistrate Judge Leonard

informed Defendants of the unreasonableness of their position, and Defendants nevertheless continued to assert the privilege, further speaks to the degree of their fault.[5]

Defendants' conduct has significantly prejudiced Plaintiff. Defendants have, thus far, successfully cherry-picked advice from their attorneys and prohibited Plaintiff from reviewing any aspect of that advice other than what Defendants have deemed to be favorable. Plaintiff has had to file a motion for summary judgment without this information. Plaintiff has had to prove the willfulness of Defendants' FLSA violations without this information. Plaintiff has had to counter Defendants' good faith affirmative defense without this information. Plaintiff has had to prepare for trial without this information. Plaintiff's liquidated damages claim, which could yield a total of $889,857.19 in *Steadfast II*, hinges on the very evidence Defendants have purposefully withheld.

Finally, as was the case in *Transportation Communications Intern. Union,* here, it is Defendants who are heavily relying on the alleged advice of Attorney Klinedinst and Defendants who first raised the issue.  Defendants cannot in all fairness rely on Attorney Klinedinst's alleged advice to avoid liability and at the same time refuse to divulge the alleged legal advice that led them to classify nurses as independent contractors. Even if the Court were to find Defendants raised the attorney-client privilege in good faith, the fact that Defendants took active steps to restrict Plaintiff's access to evidence that Defendants knew was relevant to a material issue for trial, is unacceptable and warrants application of an adverse inference. Indeed, such a remedy will help level the playing field and serve as a deterrence to others.

---

[5] This is not the first time Defendants have attempted to restrict Plaintiff's access to key witnesses in this litigation. *Steadfast I*, ECF No. 110.

Accordingly, the Court should grant Plaintiff's Motion and apply an inference against Defendants that Attorney Klinedinst offered advice to Defendants that: (1) they were obligated to pay all of the nurses listed in the *Steadfast I and II* Schedule As overtime under Section 7 of the FLSA, and (2) Defendant's classification of nurses listed in the Schedule A attached to the *Steadfast I and II* Complaints as independent contractors was unlawful as said nurses were employees covered under the FLSA.

### C. Attorney Klinedinst Testimony and Any Related Evidence Should Be Excluded because It Will Prejudice the Secretary.

Alternatively, the Court should exclude any and all evidence related to any purported advice Attorney Klinedinst gave Defendants – including but not limited to testimony from Attorney Klinedinst and her email communications to Defendants – pursuant to Fed. R. Evid. 403. Rule 403 states in pertinent part: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, as Plaintiff has argued above, any evidence regarding purported advice received by Defendants from Attorney Klinedinst would be unfairly prejudicial.

Defendants have asserted an affirmative defense in *Steadfast II* that relies exclusively on legal advice. In relying on that advice, Defendants have only revealed the information that helps them meet their burden of proof. Defendants have not revealed, or allowed Attorney Klinedinst to reveal, the entire scope of the advice she gave Defendants. Defendants have not even revealed whether Attorney Klinedinst gave them advice on FLSA compliance or on the classification of nurses as independent contractors, or whether she drew any conclusions as to Defendants' FLSA compliance or the appropriateness of Defendants' classification of nurses as independent

contractors. Defendants have not allowed Plaintiff to inquire into what information Attorney

Klinedinst considered when she rendered her advice. Defendants have not allowed Plaintiff to

inquire into the thoroughness and scope of whatever fact investigation and legal research

Attorney Klinedinst performed, if any, before offering the advice. In other words, Defendants

have cut off each and every attempt Plaintiff has made to measure the exact advice provided, and

the scope and reasonableness of that advice. To permit Defendants to introduce any evidence of

this advice at trial, would be unfairly prejudicial.

Plaintiff has repeatedly argued about the unfairness of Defendants' conduct in the context

of their good faith affirmative defense. However, Plaintiff strongly suspects the information

Defendants are withholding also supports Plaintiff's willfulness claim against Defendants.

Plaintiff, therefore, has been further prejudiced by Defendants' conduct to the extent they are

withholding evidence that supports a claim for which the Secretary bears the burden of proof.

Based on all of the above, the Court should bar Defendants from introducing any and all

evidence related to any purported advice Attorney Klinedinst gave Defendants.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff Eugene Scalia, Secretary of Labor, Department of

Labor, respectfully requests that this Court grant his Motion and applies an adverse inference

against Defendants that Attorney Klinedinst offered advice to Defendants that: (1) they were

obligated to pay all of the nurses listed in the *Steadfast I and II* Schedule As overtime under

Section 7 of the FLSA, and (2) Defendant's classification of nurses listed in the Schedule A

attached to the *Steadfast I and II* Complaints as independent contractors was unlawful as said

nurses were employees covered under the FLSA. In the alternative, Plaintiff requests that the

Court exclude from trial any and all evidence concerning any purported advice Defendants

received from Attorney Klinedinst.

Respectfully submitted,

Mailing Address:                          **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor                  Kate S. O'Scannlain
Office of the Regional Solicitor          Solicitor of Labor
201 12th Street South
Suite 401                                 Oscar L. Hampton III
Arlington, VA 22202-5450                  Regional Solicitor
(202) 693-9393(voice)
(202) 693-9392 (fax)                      Samantha N. Thomas
lewis.ryma@dol.gov                        Associate Regional Solicitor
jones.chervonti.j@dol.gov
Seifeldein.mohamed.e@dol.gov              */s/* Ryma Lewis
                                          Ryma Lewis (Bar No. 83322)

                                          /s/ Mohamed Seifeldein
March 19, 2020                            Mohamed Seifeldein (Bar No. 84424)

                                          /s/ Chervonti Jones
                                          Chervonti Jones
                                          *appearing pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2020, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ADVERSE INFERENCE AGAINST DEFENDANTS' GOOD FAITH AFFIRMATIVE DEFENSE OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE REGARDING ADVICE RECEIVED FROM ATTORNEY ARLENE KLINEDINST** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically notify Defendants by electronically serving a copy to Defendants' counsel:

> Joshua J. Jewett
> Julia A. Rust
> Christopher D. Davis
> Pierce/McCoy PPLC
> 101 W. Main St., Suite 101
> Norfolk, VA 23510
> jjewett@piercemccoy.com
> julia@piercemccoy.com
> chris@piercemccoy.com

/s/ Ryma Lewis
Ryma Lewis
