**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| MARTIN J. WALSH, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-226 |
| | ) | |
| v. | ) | Case No. 2:19-cv-475 |
| | ) | |
| MEDICAL STAFFING OF AMERICA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

The Court tried this matter on August 31, 2021. At the close of the evidence, the Court

directed the parties to file post-trial briefings in the form of Supplemental Proposed Findings of

Fact and Conclusions of Law. *See* ECF 311. In accordance with the Court's direction, Plaintiff,

Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Plaintiff"), hereby

submits the following Supplemental Proposed Findings of Fact and Conclusions of Law, based

on the evidence admitted and arguments presented at trial.

**I.      PROPOSED FINDINGS OF FACT**

Jurisdiction, Venue, and FLSA Coverage

1.      Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair

Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

Jurisdiction was not disputed. ECF No. 84 ¶¶ 1, 2.

2.      Since at least August 18, 2015, Steadfast has been a limited liability corporation

with a place of business at 5750 Chesapeake Boulevard, Norfolk, Virginia 23513, and under the

ownership of Lisa Ann Pitts. ECF No. 84 ¶¶ 1, 5; *see also* ECF No. 315 at 512:1–513:21 & 513:22–514:4.

3.      Since at least August 18, 2015, Defendants' employees have handled goods and supplies from states other than Virginia, such as providing staffing services for businesses located across state lines. ECF No. 84 ¶; *see, e.g.*, ECF No. 312 at 128:11–17; ECF No. 317 at 820:6–9 (nurses recalling working for Defendants' clients outside of Virginia). Defendants' employees also process billing invoices using an out-of-state billing company; ECF No. 315 at 588:20–589:4 (recognizing PX-11 as an example of a Steadfast invoice); PX-11 at 1 (showing an invoice with a Pennsylvania billing address).

4.      Since at least August 18, 2015, Defendant Steadfast has had an annual gross volume of sales made or business done of not less than $500,000.00.  ECF No. 84 ¶ 2; *see also* ECF No. 315 at 514:17–15:2; PX-17, 18, 20.

5.      Since at least August 18, 2015, Defendants have placed registered nurses ("RNs"), certified nursing assistants ("CNAs"), and licenses practical nurses ("LPNs") in healthcare facilities ("facilities" or "client facilities"). ECF No. 312 at 23:9–11; ECF No. 313 at 227:14–15; ECF No. 315 at 514:5–9, 13-16.

Defendants' Overtime Violations

6.      The individuals listed in Schedule A worked for Defendants as CNAs, LPNs, and RNs some point between August 18, 2015 and March 1, 2021. ECF No. 287-1, Tenth Revised Schedule A;[1] *see also* PX-6; PX-7; PX-7a; PX-21; PX-22; PX-24; ECF No. 312 at 55:13-18; at 86:7-9; at 114:1-6; ECF No. 315 at 520:6-19.

---

[1] Defendants are still not in compliance with the Act. Plaintiff is seeking back wages to the present for known and unknown employees.

7.     Defendants compensated each of the individuals listed in Schedule A for work performed on behalf or for the benefit of Defendants at some point between August 18, 2015 and March 1, 2021. PX-6; PX-7; PX-7a; PX-8; PX-22.

8.     Since August 18, 2015, Defendants paid the individuals listed in Schedule A their straight-time, hourly rate for all hours worked, including for any and all hours worked over 40 in a workweek. *See e.g.* ECF No. 312 at 32:23-25; at 94:21-25; at 95:1-6; at 121:12-17; at 176:7-10;  ECF No. 313 at 200:22-25; at 231:11-20; ECF No. 314 at 316:9-20; ECF No. 316 at 677:17-23 (employee witnesses confirming they were paid straight time for all hours worked).

9.     Since August 18, 2015, Defendants have not paid the individuals listed in Schedule A at a rate of one and one-half times their regular rate of pay for hours worked over 40 hours in a week. *Id*.; *see also* ECF No 315 at 550:24-25; at 551:1-14; PX-7; PX, 7a.

10.     Defendants knew that their overtime compensation practice were unlawful when the Department of Labor concluded its initial investigation on June 9, 2017. ECF No 315 at 550:24-25; at 551:1-9 (confirming the Department of Labor informed Defendants that their compensation practices violated the Act).

11.     Since June 10, 2017, following the conclusion of the Department of Labor's initial investigation, Defendants have not changed the practice of failing to pay employees, including the individuals listed in the Schedule A, a rate of one and one half times the regular rate for hours worked over 40 in a week. ECF No 315 at 550:24-25; at 551:10-25 (confirming Defendants continue to pay straight time for all hour worked after the Department of Labor's investigation).

12.     No exemptions apply to any of the individuals listed in Schedule A that would exempt them from Section 7 of the Act. ECF No. 315 at 562:19-25.

<u>Back Wages</u>[2]

13.   Defendants' payroll summaries accurately identify the total hours individuals listed in the Schedule A worked each week from August 18, 2015 through June 27, 2021, as well as their gross weekly wages. ECF No. 84 at ¶3; PX-21, PX-22.

14.   Plaintiff used Defendants' payroll summary to calculate overtime back wages for individuals listed in the Schedule A from August 18, 2015 through June 27, 2021. ECF No. 84 at ¶4; PX-7, PX-7a; ECF No. 314 at 459:3-6, 376:13-477:1

15.   Plaintiff also used Defendants' Next Day Pay ("NDP") records to compute back wages for individuals listed in the Schedule A between February 1, 2019 and June 27, 2021. PX-7, PX-7a; ECF No. 314 at 478:2-479:2,

16.   Plaintiff combined Payroll Summaries and NDP records to determine total hours worked and the individual on Schedule A's regular rate of pay between February 1, 2019 and June 27, 2021. ECF No. 314 at 480:4-18, 485:11-25

17.   Between February 1, 2019 and June 27, 2021, where hours worked exceeded 168 hours a workweek, Plaintiff used an average of 112 hours as the maximum hours worked to adjust the back-wage computation based upon employee interviews. ECF No. 314 at 481:8-25.

18.   Plaintiff's back wage transcriptions, Plaintiff's Exhibits 21 and 22, accurately reflect the total hours worked each week by the individuals listed in Schedule A from August 18, 2015 to March 1, 2021, as well as their gross weekly wages. ECF No. 314 at 454:13-23, 459:15-18.

19.   Plaintiff calculated back wages by taking the individual's gross weekly wage, which

---

[2] Defendants' payroll records show they have continued to pay straight time for overtime. In light of Defendants' continued violation of Section 7, Plaintiff will update the back wage computations following receipt of additional payroll records produced by Defendants.

4

appears on Defendants' payroll summary, and dividing that amount by the hours worked, which also appears on the payroll summary. This resulted in the individual's regular rate of pay. Plaintiff then multiplied the regular rate of pay by the hours worked over 40 in that workweek and multiplied the resulting number by .5 to account for the fact that Defendants paid these individuals straight time for overtime, resulting in the total back wages owed to the individual for that particular workweek.  ECF No. 314 at 459:21-460:13, 482:8-20; PX-21, 22

20.   Plaintiff's aforementioned methodology for calculating back wages is not in dispute. ECF No. 84; see also ECF No. 314 at 468:12-18, 469:15-470:1

21.   Defendants are not entitled to any offsets or credits that would reduce the amount due to individuals listed in Schedule A. *Id.*

Liquidated Damages

22.   Defendants have not established that their violations of the FLSA was in good faith or that they had reasonable grounds for believing that their failure to pay overtime compensation was not a violation of the FLSA. *see e.g.*: ECF No. 315 at 535: 24-536:2; ECF No. 318 at 1016: 23-1017: 23, 1044: 20-1045:20; ECF No. 319, 1092: 13-1093:11.

a.   Defendants did not consult any personnel within the Department of Labor to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the Act. *See* ECF No. 315 at 547:4-16, 548:11-549:11, 552:14-19.

b.   Prior to the Wage and Hour investigation, Defendants did not consult an attorney to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the Act. See ECF No. 318 at 904: 2-24, 1045: 13-20, 1106: 10-13.

c.   After the Department of Labor administrative investigation, Defendants were counseled regarding hiring practices, non-compete agreement, and level of control and oversight exercised by Defendants and advised to revise their practices. ECF No. 319 at 1100: 2-1101:8, ECF No. 318 at 1013: 10-24. *see also* PX-25; *see e.g.:*

i.      Defendant were advised to remove the non-compete clause in their Independent Contractor Agreement. *Id.*

ii.     Defendants were advised to stop using the Employment Application form. ECF No. 319 at 1097: 21-1098:5, 20-22.

d.   Despite receiving advice from their attorney on managing their relationships with the individuals on Schedule A, Defendants ignored that advice. *See* ECF No. 318 at 1012:4-1013: 24; *see also* PX-25 at 43, 54, 58, and 68.

23.   Liquidated damages is the equal amount of back wage due. PX-22; ECF No. 314 at 487:17-18.

Recordkeeping Violations

24.   Since at least August 18, 2015 Defendants failed to maintain records of their employees' wages, hours, and other conditions and practices of employment. ECF No. 315 at 593:12-19, 594:14-25; *see e.g.* ECF No. 313 at 219:17-19 (stating she never received paystubs) and 221:3-17 (stating 1099 was inaccurate); *Id*. at 294:4-5

25.   Between August 18, 2015 and present, Defendants failed to accurately record total premium pay for overtime and total additions or deductions from wages for each pay period, as required pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2. PX-6, 7, 7a, 8.

26.    Between August 18, 2015 and present, Defendants failed to accurately record straight time pay and hours worked separately from overtime pay and hours worked. 29 C.F.R. § 516.2(a). PX-6, 7, 7a, 8; ECF No. 318 at 803:3-8

27.    Defendants' payroll summaries accurately identify the total hours worked by employees between August 18, 2015 and December 23, 2019, as well as their gross weekly wages. PX-1; PX-7.

Lisa Pitts / Employer

28.    Lisa Pitts has maintained 100% ownership interest in Medical Staffing of America, LLC since at least August 2015. ECF No. 84 ¶5.

29.    Lisa Pitts is responsible for the day-to-day operations of Defendant Medical Staffing of America, LLC, including determining the rate and method of pay for individuals listed in Schedule A, recruiting, hiring and firing of all employees (PX-29), controlling conditions of employment (PX-33-35), maintaining employment records for office staff and all individuals listed in Schedule A, including but not limited to, tax forms, applicable licenses, and employment applications, supervising employees, and assuring that individuals listed in Schedule A fulfilled Defendants' contractual obligations at each facility with which Defendants had a contract. ECF No. 84 ¶6.

Employee Status

30.    Since August 18, 2015, the individuals listed in Schedule A who applied to work for Defendants completed an employment application which sought, among other things, employment history, skill set, and references. PX-26; *see also* ECF No. 312 at 87:14-25, 88-13 (employee witness detailing information required to complete Defendants' employment application).

31.   Defendants also required individuals listed in Schedule A to undergo and pass background checks and drug tests – which Defendants paid for – prior to working for Defendants. ECF No. 313 at 246:3-10, 282:2-19, 289:24-25, 290:1-2.

32.   As part of the onboarding process, Defendants provided in-service training on topics such as Abuse and Neglect, the Health Insurance Portability and Accountability Act, and Sexual Harassment. PX-32; ECF No. 312 at 66:7-25.

33.   Defendants misclassified the individuals listed in Schedule A as independent contractors. ECF No. 315 at 518:19-25; at 519:1-22; at 522:11-17 (Defendants Pitts confirming Defendants' nurses are classified as independent contractors).

34.   Since August 18, 2015, Defendants exerted significant control over the individuals listed in Schedule A, at the level expected of an employer-employee relationship. ECF No. 312 at 29:8-10 (Defendants determined employees rates of pay); 41:20-25; at 44:1- 8 (Defendants hired and fired employees); at 74:8-13; at 96:12-16 (Defendants determined where employees worked for assignments); at 98:9-15 (Defendants determined employees schedules); at 117:21-24 (Defendants required employees to submit timesheets).

35.   Defendants also disciplined nurses. *See* ECF No.  312 at 40:21-25; at 41:1-19, ECF No. 313 at 206:4-22. Defendants' client facilities confirm that they contacted Defendants when there were issues with Defendants' nurses. ECF No. 314 at 373:24-25; at 375: 1-16; at 423: 16-25; at 424:1-3; ECF No. 318 at 883:18-25.; *see e.g.* ECF No. 318 at 883:18 - 886:9-20 (Dixie DeLutis, the Director of Nursing for Sentara, confirming that she contacted Defendant Pitts to discipline Defendants' nurse who appeared intoxicated at the facility and detailing the corrective action Defendants took discipline the nurse.).

36.   Since August 18, 2015, the individuals listed in Schedule A did not have

8

opportunities for profit or loss dependent on their managerial skill. ECF No. 313 at 292:18-20;
ECF No. 314 at 317:13-15.

37.   Since August 18, 2015, the individuals listed in Schedule A did not invest in
equipment or material, or in his/her employment of other workers. ECF No. 313 at 236:4-25;
ECF No. 314 at 318:14-24; at 319:1-5; at 384:2-21.

38.   Since August 18, 2015, Defendants' work relationship with the individuals listed on
Schedule A was not limited to a specific period of time. Rather Defendants' relationship with the
individuals listed in Schedule A was permanent in nature. *See e.g.* PX-25; ECF No. 312 at 86:5-
11 (employee employed by Steadfast since 2016); ECF No. 317 at 811:19-25 (employee
employed by Steadfast from 2016 to May 2021); *see also* PX-21 and PX-16.

39.   Since August 18, 2015, the individuals listed in Schedule A rendered services that
were an integral part of Defendants' business. *See* ECF No. 84 at ¶8; ECF No. 315 at 522: 25-
523:7, 575: 13-15.

40.   Since August 18, 2015, the individuals listed in Schedule A have not been not able
to negotiate their hourly rates of pay with Defendants. ECF No. 314 at 330: 19-24, *see e.g.*:

a.   Saudia Boykins, employee, testified that she could not negotiate a different pay
rate with Defendants. ECF No. 312 at 116: 2-6.

b.   Roxanne Adams, employee, testified that Defendants were stern about their set
hourly rate and she could never negotiate her hourly rate with Defendants. *See* ECF No. 312
at 144: 15-22, 151: 8-17 (pointing out the incorrect Statements Defendants made her sign).

c.   Kimberly Bellamy, employee, testified that could not negotiate her pay rate with
Defendants. ECF No. 314 at 229: 15-25.

d.   Ashley Meggie, employee, testified that she could not negotiate her hourly rate.

ECF NO. 313 at 217: 10-22, 222: 13-19.

      e.   Yetunde Taylor, employee, testified that she tried to negotiate a different rate with Defendants, but Defendant Pitts refused. ECF No. 61: 3-11.

      f.   Tywann White, employee, tried to negotiate 1 or 2 dollars with Defendants, but he could not. ECF No. 292: 1-5.

      g.   Johnese Jones, a former office scheduler and CNA, testified that Defendants did not negotiate the rates of pay with the nurses and she did not negotiate her rate when she provided clinical care as a CNA. *See* ECF No. 313 at 198:18-23, 203:20-21.

    41.   The nurses could not negotiate their rate of pay with the facilities. *See* ECF No. 312 at 123: 8-16, 183: 3-9, ECF No. 313 at 270:20-23, 198: 18-21, 203: 12-21 282: 24-25.

    42.   Since August 18, 2015, the individuals listed in Schedule A have not been able to create their own schedules with Defendants. *See* ECF No. 312 at 27: 19-24, 35:14-20, 36: 8-25, 37:1-14, 38:20-24, 44:15-23, 79: 9-13, 97: 9-15, 118:14-119: 5, 124:7-9, 180: 17-25, 183: 13-25, ECF No. 313 at 203: 12-204: 5, 206: 4-22, 225: 5-8, 25-226:10, 269: 15-270:19, 277:3-12, 284:22-285: 24, 298: 16-299: 10, ECF No. 316 at 672: 19-673:14.

    43.   Since August 18, 2015, Defendants' clients, i.e., healthcare facilities with which Defendants contracted, have paid Defendants a set hourly rate for hours worked by the individuals listed in Schedule A. *See* PX-10 at 119, 124, 141, 146, 152, 159, PX-11, *See also* ECF No. 314 at 375: 10-18, 24: 376: 1-10, 430: 21-431:10, 432: 25-433:2, ECF No. 315 at 586: 11-17, 587:3-15, 527: 5-10, 18-24.

    44.   Defendants did not pay that same set hourly rate to individuals listed in Schedule A. Instead, Defendants retained a percentage of the hourly rate based upon business needs. *See* ECF No. 315 at 534: 6-16, ECF No. 318 at 942: 12-20, 943: 2-10.

45.   Defendants required the individuals listed in Schedule A to track their hours when working at Defendants' client facilities using timesheets. Defendants created the timesheets used by the individuals listed in Schedule A. *See* ECF No. 312 at 38: 25-39:6, 5-20, 92:13-93:11, 117: 21-118:4, 178: 3-20, ECF No. 313 at 204: 6-17, 215: 8-216:25, 224: 11-17, 230: 10-231:6, 265: 25-266:9, 283:10-284:3, ECF No. 314 at 315:1-13, 433:7-10, *see also* PX-9, PX-53-01, PX-55.

46.   The client facilities did not require the individuals listed in Schedule A to complete timesheets for compensation, nor were the facilities involved in any compensation issues between Defendants and the individuals listed in Schedule A. Rather, the facilities required Defendants to submit invoices detailing the total hours worked by Defendants' employees for the sole purpose of compensating Defendants for services rendered. *See* 312 at 135: 9-20, ECF No. 314 at 375: 1-18, 377: 5-24,  378: 6-9, 379: 6-380:4, 380: 5-381:19, 381: 14-19, 430: 25-433:10, 431: 15-432:5, 432: 8-19,

47.   Since August 18, 2015, Defendants were solely responsible for compensating the individuals listed in Schedule A for their work. *See* ECF No. 312 at 97: 19-24, 93: 5-11, 138: 22-24, 184: 4-6, ECF No. 313, 199: 6-8, 222: 20-25, 232: 19-25, 286: 16-18, 292: 14-17, 293 24-25, 297: 22-24, 33: 19-34:10, ECF No. 314 at 377: 5-18, ECF No. 315 at 531:22-532:11, ECF No. 316 at 673: 18-21, *see also* PX-8, PX-19, PX-20, PX-21-22.

48.   Defendants withheld fund from nurses' paychecks for garnishments. *See* ECF No. 312 at 33:19-35:6, ECF 315 at 595: 6-16. See also PX-7a at 46.

49.   Defendants paid individuals listed in Schedule A from their own accounts, rather than directly from the client facilities or an escrow account. *See* ECF No. 312 at 97:19 & 138:22–24; ECF No. 315 at 539:22–540:14; ECF No. 317 at 804:23–805:9; *see also* PX-8 & PX-19.

50.   Since August 18, 2015, Defendants paid the individuals listed in Schedule A on a regular pay day or on an expedited basis using "Next Day Pay." PX-34; ECF No. 318 at 1039:4–1042:1.

51.   Since August 18, 2015, Defendants have required the individuals listed in Schedule A to notify the company when they wanted to take time off or were sick and could not work or complete a shift. *See, e.g.*, ECF No. 312 at 37:15–22, 95:7–23, & 121:24–22:11; *see e.g.*:

a.   Yetunde Taylor, employee, testified that she was required to provide notice to Defendants when she was running late or unavailable to work.  She explained that even when she provided such notice, Defendants responded that she would be fired if she called out.  *See* ECF No. 312 at 70:13–72:11; *see also* PX-53 at 3.

b.   Andrea Tirado, employee, testified that she was required to let Defendants know when she was unavailable to work.  Tirado recalled an instance where she provided Defendants a month's notice that she would be on vacation and unavailable to work.  Nonetheless, Tirado's scheduled shifts were cancelled when she returned from vacation.  *See* ECF No. 314 at 335:18–338:20.

52.   Since August 18, 2015, the individuals listed in Schedule A could only increase their wages by working more hours. *See* ECF No. 316 at 674:21–23; *see e.g.*:

a.   Teresa Morey, employee, testified that she often worked "70 to 80 to somewhere upwards of 120 hours a week" for Defendants, getting "three or four hours of sleep a night." ECF No. 313 at 247:2–20. Defendants permitted her to "work all the overtime [she] wanted," but did not pay her time and a half. *Id*. at 252:1–11.

b.   Courtney Turner, employee, testified that, despite not receiving overtime compensation from Defendants, she had to work more than 40 hours a week to have enough

income to care for her children. *See id*. at 284:8–13.

53.   Defendants provided individuals on Schedule A letters, as their employer, to permit them to travel to work during the pandemic lockdowns. PX-33.008; see ECF No. 318 at 1002:12–1003:25.

54.   Since August 18, 2015, Defendants have not allowed the individuals listed in Schedule A to hire other nurses, employees, or contractors to work for them at Defendants' clients' facilities. *See, e.g.*, ECF No. 312 at 73:24–74:7, 122:15–25, & 141:12–18; ECF No. 317 at 823:23–824:5.

55.   Since August 18, 2015, Defendants' client facilities provided all required of the tools and equipment that the individuals listed in Schedule A needed to perform their jobs. *See, e.g.*, ECF No. 312 at 84:1–14; 98:8–99:4; & 184:16–23. While some nurses and nursing assistants *preferred* to use their own equipment, such as stethoscopes and blood pressure cuffs, they were not *required* to use their own equipment. *See, e.g.*, ECF No. 317 at 825:13–826:8.

56.   Since August 18, 2015, the individuals listed in Schedule A were required to wear badges bearing the name "Steadfast Medical" while working at client facilities. *See, e.g.*, ECF No. 312 at 72:16–73:3, 99:25–100:5, & 124:14–20.

57.   Since August 18, 2015, the individuals listed in Schedule A have not owned their own businesses and have not advertised their services in any way. *See, e.g.*, ECF No. 312 at 92:8–12, 140:25–141:5, & 176:25–177:5; ECF No. 313 at 290:18–23; ECF No. 316 at 715:10–716:3.

58.   Defendants have paid the individuals listed in Schedule A an hourly rate since August 18, 2015. *See, e.g.*, ECF No. 312 at 60:24–25, 90:5–7, & 115:24–116:1; *see generally* PX-21.

13

59.   Defendants garnished employee wages, as an employer, pursuant to court orders, such as Income Withholding Orders and Child Support Orders. ECF No. 312 at 33:19-35:6; ECF No. 315 at 595:6-22; *see also* PX-7a.

60.   Since August 18, 2015, "Medical Staffing of America" appears on the paystubs and earnings statements of the individuals listed in Schedule A. ECF No. 84 ¶ 7; *see also, e.g.*, ECF No. 313 at 292:14–17; PX-8.

61.   Since August 18, 2015, Lisa Pitts covers the individuals listed on Schedule A on her insurance policy and handles all workers compensation claims arising out of injuries that occur at facilities. PX-28; *see also* ECF No. 312 at 42:25-43:15.

62.   Since August 18, 2015, Lisa Pitts has been responsible for disciplining the individuals listed in Schedule A. If a client facility had an issue with an individual listed in Schedule A regarding tardiness, conduct and other similar issues, the facility contacted Defendant Pitts to address the disciplinary issue with the employee directly. *See, e.g.,* ECF No. 314 at 373:24–374:19, 396:1–11, 423:16–17, & 424:11–18, *see e.g.*:

   a.   Courtnay Hope-Draughn, a former office employee (call center agent, account manager), testified that Defendant Pitts removed nurses from the schedule if Defendants discovered that the nurse had discussed their compensation with a co-worker or a client. ECF No. 312 at 30:1–25. Defendant Pitts also removed nurses from the schedule as punishment for attempting to contact client facilities to set their own schedules. *Id.* at 35:14–20; *see also* ECF No. 316 at 647:8–16. Additionally, other witnesses recalled Pitts' practice of removing nurses from the schedule as a means of discipline. *See, e.g.*, ECF No. 312 at 119:17–120:16; ECF No. 314 at 335:18–336:7.

   b.   David Rawlings, Dunlop House corporate representative, testified that "if there

14

were any problems regarding a Steadfast's employee, we would contact Steadfast." ECF No. 314 at 424:9–10. He further clarified that the facility would only address a Steadfast employee's performance regarding a "standard of practice" that "needed to be corrected immediately because of safety or the care of a resident, but not from a disciplinary standpoint." *Id*. at 424:15–18.

      c.  Roxanne Adams, employee, testified: "The facility never supervises us. If anything goes on in the facility, they call Steadfast, and Steadfast let us know that we have done something wrong, may it be that we have been DNR'd [told not to return to the facility], or whatever, but we never get anything like that from the facility itself." ECF No. 312 at 150:20–24.

      63.  Since August 18, 2015, Defendants have not permitted the individuals listed in Schedule A to work for Steadfast's competitors without first obtaining expressed written permission from Steadfast. PX-25.057- 72 (Independent Contract Agreements containing non-compete clause) *cf* PX-10 and PX-12 (Facility Contracts containing non-compete/prohibition clause); PX-36; ECF No. 312 at 31:5-22; *see e.g.*:

      a.  Yetunde Taylor, employee, testified that she was prohibited from working for another agency. ECF No. 312 at 62:6-63:3

      b.  Dawn Wooten, employee, testified that Defendants removed her from a facility after the facility express an interest in hiring her permanently. ECF No. 312 at 177:15-178:2

      c.  Teresa Morey, employee, testified that Defendants restricted her from accepting placement opportunities at other companies. ECF No. 313 at 248:22-250:22, 273:6-14.

      64.  Between August 18, 2015 and present, individuals listed in Schedule A who were employed as CNAs, LPNs and RNs, did not exercise independent judgment. These employees

15

performed the same day-to-day activities typical of employees performing the same work in the medical industry. These employees administered medications, cared for patients, treated wounds, monitored patients, and took notes. *See e.g.* ECF No. 312 at 99:11-21(discussing services LPNs provide), ECF No. 314 at 365:19-25. The contracts between Defendants and the facilities dictated the services Steadfast's employees would provide. PX-10, 12; *see also* ECF No. 314 at 363:25-386:4 (Princess Anne corporate representative direct examination) and *Id*. at 415:3-434:4 (Dunlop House corporate representative direct examination).

65.   Between August 18, 2015, and present, the individuals listed in Schedule A were employees as defined by 29 U.S.C. § 203(e)(1). PX-1; PX-23

Damages[3]

66.   Defendants owe back wages for violating Section 7 of the Act between August 23, 2016 and June 27, 2021 in the amount of $3,619,716.49.  PX-21; PX-22, PX-43; ECF No. 314 at 456:12-17, 457:7-11, 461:20-24, 467:6-15, 468:12-18, 477:2-9; *see e.g.* ECF No. 314 at 458:11-459:2 and 477:12-23; *see also* ECF No. 84 (requiring Defendants to complete a "math check") and ECF No. 244 at p. 7 (stating Defendants will be "bound by their discovery answers in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.").

67.   Defendants owe liquidated damages for violating Section 7 of the Act between August 23, 2016 and March 1, 2021 in the amount of $3,619,716.49. PX-22; ECF 314 at 487:11-21.

Willfulness

---

[3] Defendants' payroll records show they have continued to pay straight time for overtime. In light of Defendants' continued violation of Section 7, Plaintiff will update the back wage computations following receipt of additional payroll records produced by Defendants.

68.   Since at least June 9, 2017, Defendants knew their overtime practices were prohibited by the Act, but regardless of that knowledge, they continued to pay straight time for overtime. ECF No. 315 at 550:25-551:14; *see also* PX-12, PX-21, PX-22.

69.   Defendants made a conscious decision to continue misclassifying employees after being informed by the sole government agency tasked with enforcing the Act that their pay practices of paying straight time for all worked was unlawful under the Act. *Id.*

70.   Employees complained to Defendants regarding not receiving overtime to which they were entitled under the Act. ECF No. 312 at 78:5-13, 127:5-15, 185:24-186:7; ECF No. 314 at 344:12-345:1 ECF No.313 at 221:21-222:7.

71.   Defendants directed the developer of its mobile app, Zira Technology, to remove notices to Defendants alerting it when nurses worked over 40 hours in a workweek (overtime). ECF No. 318 at 1016:23-1017:23 (confirming direction to Zira to remove overtime notices to monitor compliance with the Act); PX-2.075, 2.081- 82, PX-3.

72.   Despite, Defendants review of FAB 2018-4 and understanding that Defendants' practice were wholly inconsistent with the FAB 2018-4, they continued to classify individuals on Schedule A as independent contractors.  ECF No. 318 at 1032:4-1043:22, *see e.g.:*

a.   Defendants sets rates of pay *cf* FAB: "A registry that directs and controls the caregiver's work and sets the caregiver's rate of pay may be an employer of the caregiver." *Id* at 1033:22-1034:5;

b.   Defendants requires nurses to contact the registry if they are going to be late or miss or cancel a shift *cf* FAB: "[R]equiring a caregiver to call only the registry, instead of the client if the caregiver will be late or miss a shift […] is indicative of an employer/employee relationship." *Id* at 1035:3-17; see also PX-33.004,5,9,11 and PX-35, 37;

17

c.   Defendants guarantee payment of work ("We use our money and we pay the staff.") *cf* FAB: "A registry's direct payment of its own funds to the caregiver, however may indicate that the registry is the caregiver's employer. This is true regardless of whether the registry typically received reimbursement from the client because...the registry may be effectively guaranteeing the payment...". *Id* at 1039:4-1042:1; *see also* PX-34

Injunctive Relief

73.   Defendants are still violating the Act – even after the Plaintiff warned them that their overtime practice was unlawful. PX-21; *see also* ECF No 315 at 550:24-25; at 551:10-25.

74.   Defendants' failure to comply with the mandates of the Act has affected the market, resulting in unfair competition. Specifically, Defendants' failure to pay overtime has hindered competition by precluding competitors from obtaining facility contracts due to their compliance with the overtime provisions of the Act. ECF No. 315 at 623:18-25; at  624:1-2; *see also* ECF No. 308.

75.   Since Defendants do not pay overtime as required by the Act, they are able to charge lower rates for hours worked over 40 in a workweek making their rates more desirable to facilities – directly impacting competition and commerce. ECF No. 315 at 624:3-6.


**II.  PROPOSED CONCLUSIONS OF LAW**

1.      Defendant Lisa Pitts is an "employer" under Section 3(d) of the Act, 29 U.S.C. § 203(d), and is therefore individually liable for the violations of the Act, along with Defendant Medical Staffing of America, LLC. *See* ; *See Kerr v. Marshall Univ. Bd. of Governors,* 824 F.3d 62, 83 (4th Cir. 2016)

2.      Defendants Medical Staffing of America, LLC, and Lisa Pitts have been an

enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose. *See Brock v.Hamad*, 867 F.2d 804, (4th Cir. 1989) 806–07; *Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-CV-549, 2019 WL 1601997, at *13 (E.D. Va. Apr. 15, 2019). These activities constituted (and/or were related to) the providing of medical staffing services in furtherance of the business purposes of Defendants' unified business entity.

3.      The Act broadly defines employment as "to suffer or permit to work." *See* 29 U.S.C. §203(g). Both Congress and the courts have recognized that this definition of employee is broader than under any other piece of social legislation.  *See McComb v. Homeworkers' Handicraft Cooperative*, 176 F.2d 633, 636 (4th Cir. 1949); *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), *cert. denied* 474 U.S. 919 (1985). Schedule A individuals "suffered to work" for Defendants and, therefore, were employees as defined under Section 3(g) of the Act. Schedule A individuals suffered to work for, and were permitted to work by, Defendants as demonstrated, in part, by the paystubs carrying Steadfast's name.

4.      As Schedule A workers were employees, Defendants were required to pay them the overtime premium rate of not less than one and one-half times their regular rates of pay for hours worked over 40 in a workweek.  *See* 29 U.S.C. § 207(a)(l); *United States Dep't of Lab. v. Fire & Safety Investigation Consulting Servs.*, 915 F.3d 277, 280 (4th Cir. 2019).

5.      Plaintiff is entitled to a three-year period of back wages and liquidated damages where an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the Act. *Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 375 (4th Cir. 2011); *see also Mumby v. Pure Energy Services (USA), Inc.,* 636 F.3d 1266, 1270 (10th Cir. 2011).

19

6.      Defendants willfully violated the Act after the first investigation concluded. 29 U.S.C. § 255(a). After the events that led to Plaintiff filing *Steadfast I* and *after* being informed that their practices were unlawful, Defendants made a separate decision to continue to misclassify their employees after July 10, 2017 (the close of the *Steadfast I* investigative period). Defendants exercised perpetual "indifference toward the requirements imposed" by the Act by failing to systematically resolve the ongoing pay issues. *Garcia v. Tenafly Gourmet Farms, Inc.*, 2012 WL 715316, *2 (D.N.J. 2012) (internal citations omitted); *Abbey v. United States,* 106 Fed. Cl .254, 265 (Fed. Cl. 2012).

7.      Defendants refused and have not paid their employees overtime compensation. *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Montfort, Inc.,* 144 F.3d at 1334-35 (willfulness established where the employer knew about violations from a sister plant); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (finding willfulness where the employer "could easily have inquired into" relevant compliance issues after learning of their illegality). *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (citing *Lyle v. Food Lion*, 954 F.2d 984, 987–88 (4th Cir. 1992). Defendant knew the employees worked overtime because they facilitated the work. Defendants willfully violated the Act.

8.      Defendants are jointly and severally liable for back wages totaling $3,619,716.49 owed to at least 900 employees listed in Schedule A of the Complaint. *See* 29 U .S.C. § 203(d); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (the "overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the Act for unpaid wages.").

9.       The measure of actual damages sustained by an employee resulting from an employer's violation of the FLSA is the difference between the amount the employee was paid and the amount that he should have been paid but for the violation. 29 U.S.C. 216(b).

10.       The proper method of calculating back wages owed to the employees listed in Schedule A is to take the individual's gross weekly wage and divide that amount by the hours worked, which provides the employees regular rate of pay. Then, multiply the regular rate of pay by the hours worked over 40 in that workweek and multiply the resulting number by .5. *See* 29 C.F.R. §778.107; 29 C.F.R. § 778.110.

11.       Defendants are not entitled to any offsets or credits that would reduce the amount due to the individuals listed in Schedule A attached to Plaintiff's Complaint. *See Scott v. City of New York*, 592 F. Supp.2d 475, 481 (S.D.N.Y. 2008) (under Section 7 of the Act, only three categories of compensation may be used to offset overtime compensation); 29 U.S.C. § 207(h)(2) (each of those categories requires "extra compensation provided by a premium rate.").

12.       No exemptions apply to any of the Schedule A employees that would exempt them from Section 7 of the Act. *See Iontchev v. AAA Cab Serv., Inc.,* 685 Fed. Appx. 548, 549 (9th Cir. 2017) (employer has the burden of proving by "clear and convincing evidence that [employees] are independent contractors under the Act"); *Piña v. Pakalex Inc*., No. CV TDC-15-0638, 2015 WL 6082372, at *2 (D. Md. Oct. 14, 2015); *Leon v. Alvarez*, No. CBD-16-0416, 2017 WL 4236813, at *2 (D. Md. Sept. 25, 2017); *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97 (1974)

13.       The Act imposes requirements on the employer of keeping records of an employee's hours worked, regular hourly rate of pay for any workweek, total premium pay for overtime hours, and total additions to or deductions from wages paid, amongst other

21

recordkeeping requirements, which Defendants failed to keep.  29 C.F.R. § 516.2(a)(7), 516.3.

14.     Plaintiff satisfied his burden of proving the amount of back wages owed to the employees listed in Schedule A of the Amended Complaint as a result of Defendants' violation of Section 7 of the Act between August 18, 2015 and June 27, 2021, by performing the above-listed calculation based on the information set forth in Defendants' timesheet and payroll summaries. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946) (The Secretary need only show the employees at issue performed the work for which they were improperly compensated. That burden requires evidence showing the amount and extent of the work performed as a matter of just and reasonable inference. Once the inference is established, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence).

15.     When an employer is found to have violated the overtime payment requirements of the Act, the employer "shall be liable" to the employee for liquidated damages in an amount equal to the amount of overtime compensation owed. 29 U.S.C. § 216. Liquidated damages are "the norm" where a violation of the Act is found. Liquidated damages are not penal in nature, but represent compensation to the employee for otherwise obscure and difficult to prove damages. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

16.     Defendants bear the burden of proving by a preponderance of the evidence that Plaintiff is not entitled to liquidated damages because Defendants violated the Act in good faith, as set forth in 29 U.S.C. § 260. That burden is a high one. *Lockwood v. Prince George's Cty., Md.*, 58 F. Supp. 2d 651, 657 (D. Md. 1999), aff'd, 217 F.3d 839 (4th Cir. 2000); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

22

17.     Defendant must present "plain and substantial" evidence that it acted with subjective good faith and objective reasonableness to assert a good faith affirmative defense. *See* 29 U.S.C. § 260; *see also Richard, et al. v. Marriott Corp*., 549 F.2d 303, 306 (4th Cir. 1977); *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994); *Lockwood*, 58 F. Supp. 2d at 657.

18.     To meet this burden, an employer must affirmatively establish a subjective defense, i.e., that the employer acted in good faith by taking active steps to ascertain the dictates of the Act and then moved to comply with them. *See Quirk v. Baltimore Cty., Md*., 895 F. Supp. 773, 788 (D. Md. 1995) ("Good faith requires some investigation of potential liability. An employer cannot simply remain blissfully ignorant of FLSA requirements."); *accord, Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't*, No. Civ. B-92-1066, 1996 WL 1187049, at *17 (D. Md. Oct. 30, 1996).

19.     Defendants must prove that they investigated their potential liability under the Act before implementing their pay practice of paying straight time for overtime hours worked before the Court can relieve them of their obligation to pay liquidated damages under Section 216(c).

20.     Under the Fair Labor Standards Act, an award of liquidated damages is mandatory. Indeed, mere reliance on the advice of counsel, alone and regardless of the nature of said advice, is insufficient to satisfy a defendant's burden in proving good faith. *See Fuentes v. CAI Int'l, Inc*., 728 F. Supp. 2d 1347, 1358 (S.D. Fla. 2010); *see also Rakip v. Paradise. Awnings Corp*., No. 10–20004–CIV, 2010 WL 4553675, at *7 (S.D. Fla. Nov. 3, 2010).

21.     Defendants failed to satisfy the subjective prong of the good faith affirmative defense. *Perez v. Am. Future Sys., Inc.*, No. CV 12-6171, 2015 WL 8973055, at *13 (E.D. Pa. Dec. 16, 2015) ("[w]here such a legal opinion has been sought and obtained, defendant cannot

23

demonstrate that it has acted in good faith unless it comes forward with at least some evidence that it acted in conformance with that legal advice (or, at the very least, that it has not contravened the legal advice)."), *aff'd sub nom. Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420 (3d Cir. 2017); *Roy v. Cty. of Lexington, S.C.,* 141 F.3d 533, 543 (4th Cir. 1998).

22.     The employer must also establish an objective defense, i.e., that there were reasonable grounds for believing the employer was in compliance with the Act. *Lockwood,* 58 F. Supp. 2d at 658; *Anderson*, 2007 WL 2819533, at *2; *Marshall*, 668 F.2d at 753; *see also* 29 C.F.R. § 790.22.

23.     Defendants failed to meet its burden of proving both that it acted in good faith and that it had a reasonable belief that its actions complied with the Act; therefore, an award of liquidated damages equal to the back pay owed is mandatory. 29 U.S.C. § 216

24.     As an affirmative defense, Defendants bear the burden of proving by a preponderance of the evidence that the individuals listed in Schedule A of the Complaint are independent contractors. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97 (1974); *Iontchev v. AAA Cab Serv., Inc.,* 685 Fed. Appx. 548, 549 (9th Cir. 2017); *Piña v. Pakalex Inc*., No. CV TDC-15-0638, 2015 WL 6082372, at *2 (D. Md. Oct.14, 2015); *Leon v. Alvarez*, No. CBD-16-0416, 2017 WL 4236813, at *2 (D. Md. Sept. 25, 2017); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1383 (S.D. Fla. 2012).

25.     The federal common law test "for determining who qualifies as an 'employee'[… provides that] all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 23 (1992). In the Fourth Circuit, as in most other circuits, the courts consider the economic

realities of the relationship and ask "whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006), quoting *Henderson v Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (citing *Bartels v. Birmingham*, 322 U.S. 126, 130 (1947)).

26.     The Fourth Circuit applies a six-factor test to determine whether the individual rendering services is an employee or an independent contractor. The factors are: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) [whether] the worker's opportunities for profit or loss [are] dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. Schultz, 466 F.3d at 304–05. *See e.g. Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 2016); *Gayle v. Harry's Nurses Registry*, 594 Fed. Appx. 714 (2d Cir. 2014); *Hughes v. Family Life Care, Inc.*, 117 F. Supp. 3d 1365 (N.D. Fla. 2015); *LeMaster v. Alternative Healthcare Solutions, Inc.*, Case No. 3:08– 1101, 726 F. Supp. 2d 854 (M.D. Tenn. 2010); *Crouch v. Guardian Angel Nursing, Inc.*, Civil Action No. Action No. 3:07–cv–00541, 2009 WL 3737887 (M.D. Tenn. 2009); *Richardson v. Genesee County Cmty. Mental Health Servs.,* 45 F. Supp. 2d 610 (E.D. Mich. 1999).

27.     No single factor is determinative for the Court's analysis. *See Schultz*, 466 F.3d at 305. The totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 676 (1st Cir. 1998). The focal point of this analysis is "whether the

worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." *Schultz*, 466 F.3d at 304.

28.     Defendants failed to meet their burden of proving that the Schedule A employees were independent contractors and, therefore, exempt from Section 7 of the Act. *See Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-CV-549, 2019 WL 1601997, at *13 (E.D. Va. Apr. 15, 2019) citing *Donovan v. Tehco, Inc.,* 642 F.2d 141 (5th Cir. Unit A 1981 ); *see also Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946)

29.     As there are clear violations of the Act in this case, Plaintiff is entitled to injunctive relief against Defendants to enjoin future violations of the Act such that:

a.   Defendants shall not violate Section 7 of the Act, 29 U.S.C. § 207;

b.   Defendants shall pay all non-exempt employees at least time and one-half their regular rates for all hours worked in excess of forty per workweek under Section 7;

c.   Defendant shall not violate Section 11 of the Act, 29 U.S.C. § 211, and 29 C.F.R. § 516, *et seq.*;

d.   Defendants shall maintain and preserve records pursuant to Section 11 of the Act and 29 C.F.R. § 516, *et seq.*; andDefendants shall preserve these records for at least three years. *See McComb v. Homeworks' Handicraft Co–op*, 176 F.2d 633 (4th Cir. 1949); *see also Martin v. Funtime,* 963 F.2d 110, 113 (6th Cir. 1992)

Respectfully submitted,

Mailing Address:                          **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor                  Seema Nanda
Office of the Regional Solicitor          Solicitor of Labor
201 12th Street South
Suite 401                                 Oscar L. Hampton III
Arlington, VA 22202-5450                  Regional Solicitor
(202) 693-9393(voice)
(202) 693-9392 (fax)                      Samantha N. Thomas
lewis.ryma@dol.gov                        Associate Regional Solicitor
jones.chervonti.j@dol.gov
Seifeldein.mohamed.e@dol.gov              */s/* Ryma Lewis
                                          Ryma Lewis (Bar No. 83322)
                                          Wage and Hour Counsel

November 3, 2021                          /s/ Chervonti Jones
                                          Chervonti Jones
                                          *appearing pro hac vice*
                                          Senior Trial Attorney

                                          /s/ Mohamed Seifeldein
                                          Mohamed Seifeldein (Bar No. 84424)
                                          Trial Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, a true and correct copy of the foregoing Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically notify Defendants by electronically serving a copy to Defendants' counsel:

Joshua J. Jewett, Esq.
Julia A. Rust, Esq.
Aaron Seigrist, Esq.
Pierce/McCoy PPLC
101 W. Main St., Suite 101
Norfolk, VA 23510
jjewett@piercemccoy.com
julia@piercemccoy.com
asiegrist@piercemccoy.com

27

_/s/ Ryma Lewis_
Ryma Lewis