

FILED

NOV 2 9 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

JULIE A. SU,
ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

                   Plaintiff,

      v.

MEDICAL STAFFING OF AMERICA, LLC, d/b/a
STEADFAST MEDICAL STAFFING, and LISA
PITTS,

                   Defendants.

Case No. 2:18–cv–226

Case No. 2:19–cv–475

***MEMORANDUM OPINION AND ORDER***

      Before the Court is its order for Medical Staffing of America d/b/a as Steadfast Medical

Staffing and business owner Lisa Pitts (collectively, "Defendants") to Show Cause whether to

sanction them for allegedly continuing to violate the Court's January 14, 2022 Order. Defendants

filed their Response to the December 22, 2022 "Show Cause" Order.[1] Def's Resp. Show Cause,

ECF No. 364 ("Defs.' Resp."). The United States Department of Labor ("Plaintiff" or "DOL")

filed its Response to Defendants Response to the Court's December 22, 2022 "Show Cause" Order.

Pl.'s Resp. Show Cause, ECF No. 365 ("Pl.'s Resp."). The Court held a Show Cause hearing on

March 2, 2023. Hear'g Show Cause, ECF No. 370 ("Hear'g"). Having carefully reviewed the

parties' briefs, the Court finds this matter ripe for judicial determination. For the reasons set forth

below, the Court's Show Cause Order is **DISMISSED.**

---

[1] The Court's order notes that Defendants were found liable for failing to pay overtime and maintain pay records
under the Fair Labor Standards Act ("FLSA"). ECF No. 363. Further, the Court enjoined Defendants from
committing further FLSA violations. *Id.*

## I.   PROCEDURAL AND FACTUAL HISTORY

On May 2, 2018, Plaintiff initiated an enforcement action against Defendants, alleging several Fair Labor Standards Act ("FLSA") violations. Compl., ECF No. 1. On January 14, 2022, following a bench trial, the Court entered judgment in favor of Plaintiff, finding Defendants liable for violating the FLSA for failing to pay overtime and maintain records. ECF Nos. 324, 325. In its Memorandum and Opinion, the Court enjoined Defendants from committing further FLSA violations and accepted Plaintiff's back wage calculations and methodology, finding that Defendants owed $3,619,716.49 for overtime violations from August 18, 2015 to June 27, 2021 and an equal number of liquidated damages, totaling $7,229,432.98. Court's Order, ECF No. 324 (the "Court's Order" or "Order"). In that same Order, the Court directed Plaintiff to provide an updated calculation of additional back pay and liquidated damages from any continued FLSA violations from June 27, 2021, to January 13, 2022. *Id.*

On March 11, 2022, Plaintiff submitted updated back wage calculations for $9,075,285.66, an amount that includes $1,835,852.68 in added back wages and liquidated damages. ECF No. 329. On March 13, 2022, Defendants filed a Motion for Relief in Connection with Plaintiff's Trial Exhibit PX-21,[2] and Opposition to Plaintiff's March 11 "Updated Back Wage Computations," claiming that Plaintiff's backpay and liquidated damage calculations included several computational errors. ECF No. 331. On March 14, 2022, Defendants filed a notice of appeal to contest the final judgment. ECF No. 332. On April 8, 2022, the Court deferred ruling on Defendant's Motion for Relief in the interest of judicial economy."[3] ECF No. 340.

---

[2] Trial Exhibit PX-21 is a backpay table that includes approximately 10,000 entries the DOL created using data taken from Defendants' payroll, invoices, and worker timesheets, which were produced in discovery and are part of the trial record.
[3] Defendants filed their reply on April 4, 2022.

On July 14, 2022, Plaintiff filed a Motion for Entry of Updated Order, ECF Nos. 346, 347, which Defendants opposed, ECF No. 350. On July 28, 2022, Plaintiff filed a Motion for Bond alleging that Defendants continue to violate the FLSA and the Court's Order. On December 20, 2022, the Court denied Plaintiff's Motion for Bond. ECF No. 362. On December 22, 2022, the Court ordered Defendant to Show Cause within thirty days regarding whether to sanction them for allegedly failing to comply with the Court's Order. ECF No. 363. On January 23, 2023, Defendants filed their response to the Court's Show Cause Order. Defs.' Resp. On February 6, 2023, Plaintiff filed its response to Defendants' response to the Court's Show Cause Order. Pl.'s Resp. On March 2, 2023, the Court held a hearing on the Show Cause Order. Hear'g. During that hearing, Defendants informed the Court they obtained an auditor on February 17, 2023, and that they should have shown Plaintiff the policy change and provided them the pay records during summer 2022. *See* Show Cause Hearing Transcript 9: 12–13; 12: 11–12.

At the hearing, the Court made the following factual findings:

1. The Court issued its Final Judgment and Injunction on January 14, 2022, enjoining Defendants from further violating the FLSA.

2. Since that time, Defendants updated their payroll system and began paying their workers overtime at a rate of 1.5x their regular rate for any hours over 40 hours worked in a workweek on February 8, 2022.

3. The DOL requested payroll records and interviewed Defendants' employees about their compensation to monitor Defendants' compliance under the FLSA.

4. On several occasions, the DOL learned that Defendants remained non-compliant under the FLSA and failed to pay its workers overtime.

5. On July 14, 2022, the DOL submitted its most recent request for payroll records to

Defendants.

6. The DOL did not receive the requested records until March 1, 2023, the evening before the parties' Show Cause Hearing.

7. Defendants hired an outside payroll auditor to review its payroll system on February 17, 2023 – less than two weeks before the scheduled Show Cause Hearing.

8. The audit uncovered that Steadfast had failed to pay at least $175,000 to its workers in violation of the FLSA since February 8, 2022.

## II. LEGAL STANDARDS

### A. Contempts – Civil vs. Criminal

It is well-established that federal courts possess an inherent power to punish for contempt of court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). This power reaches to contempts that occur before the court (i.e., "direct" contempt) and to contempts that occur out of court (i.e., "indirect" contempt). *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994). In this case, indirect contempt is at issue.

As an initial matter, the Court must determine whether the movant seeks to hold the defendant in civil or criminal contempt. *Major v. Orthopedic Equip. Co.*, 496 F. Supp. 604, 611 (E.D.Va. 1980). This determination is important from the outset as it "may bear on the type of notice required, the applicable standard of proof, and other issues." *Buffington v. Baltimore Cnty, Md.*, 913 F.2d 113, 133 (4th Cir. 1990) (citing *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980)). "[C]riminal contempt [is] 'a crime in the ordinary sense,'" *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 799 (quoting *Bloom v. Ill.*, 391 U.S. 194, 201 (1968)), such that the subject of the sanctions is "entitled to [the] full criminal process," *Bagwell*, 512 U.S. at 827, including the use of an independent prosecutor, *United States v. Neal*, 101 F.3d 993, 997 (4th

Cir. 1996). In contrast, civil contempt sanctions call for fewer procedural protections; notice and

an opportunity to be heard are required. *Bagwell*, 512 U.S. at 827. Unlike criminal contempt, the

finding of civil contempt must rest on proof by clear and convincing evidence; there is neither a

right to a jury trial nor proof beyond a reasonable doubt required. *Cromer v. Kraft Foods N. Am.,*

*Inc.*, 390 F.3d 812, 821 (4th Cir. 2004); *Bagwell*, 512 U.S. at 827.

In addition to the differences in the substance of the proceedings, the distinction between

criminal and civil lies in "the character of the relief that the proceeding will afford." *Hicks on*

*Behalf of Feiock v. Feiock*, 485 U.S. 624, 631 (1988). The contempt is civil if the purpose is

remedial and intended to either coerce compliance with the court order or to compensate the

plaintiff for losses sustained. *Buffington*, 913 F.2d at 133. *See also Consolidation Coal Co. v.*

*Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 829 (4th Cir. 1982) (stating fines for

civil contempt "are designed primarily to coerce behavior"). If, however, the purpose is to

vindicate the court's authority by punishing the offending party for past disobedience, the

proceeding is criminal. *Buffington*, 913 F.2d at 133.

In the instant case, Plaintiff's response to the Court's Show Cause Order has two goals.

First, Plaintiff seeks compensation for losses amassed while Defendants failed to comply with

the Court's Order. Pl.'s Resp. at 9. Second, Plaintiff seeks civil confinement of Defendant Pitts

to coerce Defendants to comply with the Court's Order. *Id.* at 11. Thus, Plaintiff is not seeking

any punitive sanctions against Defendant. For this reason, the Court finds that Plaintiff seeks to

hold Defendants in civil contempt.

**B. Civil Contempt Standard**

Civil contempt is appropriate where a party has violated an order of a court which "'set[s]

forth in specific detail an unequivocal command' which a party has violated." *In re General*

5

*Motors*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986)). The violation must be of an order that is "clear and unambiguous." *Id.* (quoting *Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991)). To establish civil contempt, Plaintiff must show each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
>
> (2) that the decree was in the movant's "favor";
>
> (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and
>
> (4) that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir.2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F .Supp. 1397, 1405–06 (E.D.Va.1992), *aff'd*, 38 F.3d 133, 136 (4th Cir.1994)).

A good faith attempt to comply, even if such attempt proves ineffective, is a defense to a civil contempt order. *Consolidation Coal Co.*, 683 F.2d at 832 (citing *Consolidation Coal Co. v. Int'l Union, United Mine Workers of Am., et al.*, 537 F.2d 1226 (4th Cir. 1976)). Other defenses include substantial compliance or the inability to comply. *Id.* (citing *Washington Metro. Area Transit Auth. v. Amalgamated Transit Union*, 531 F.2d 617 (D.C. Cir. 1976)).

If contempt is found, the trial court has broad discretion to fashion a remedy. *In re General Motors*, 61 F.3d at 259. A coercive contempt sanction may involve imprisonment or a fine. *See Bagwell*, 512 U.S. at 829. Regarding fines, the power to fine is based on the power to fashion injunctive relief; without the authority to levy fines, a court would have the power to grant a remedy but no effective means of enforcement. *Consolidation Coal Co.*, 683 F.2d at 829–30. A contempt fine is considered civil when the fine is remedial (i.e., either paid to the

6

complainant or, when payable to the court, avoidable by the contemnor by simply performing the affirmative act required by the court's order). *Buffington*, 913 F.2d at 133. *See also Bagwell*, 512 U.S. at 829 (if the fine is not intended to compensate, it is civil only if the contemnor has the opportunity to purge the fine, i.e., reduce or avoid the fine through compliance). In other words, a fine that is payable to the court but not conditioned on compliance with a court order is punitive and therefore, not civil. *Buffington*, 913 F.2d at 134. As to the nature of the fine, a court may impose "a per diem fine . . . for each day a contemnor fails to comply with an affirmative order . . . . [S]uch fines exert a constant coercive pressure, and once the . . . command is obeyed, the future, indefinite, daily fines are purged." *Bagwell*, 512 U.S. 821, 829.

Courts may also order the contemnor to reimburse the complainant for reasonable attorney's fees. *In re General Motors*, 61 F.3d at 259 (citing *United States v. Trudell,* 563 F.2d 889, 891 (8th Cir.1977)). Although willfulness is not an element of civil contempt, *Id.* at 258 (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949)), district courts in this Circuit have held that before awarding attorney's fees, a finding of "willful disobedience" – whereby the contemnor's conduct rises to the level of obstinance or recalcitrance – may be required. *Omega World Travel, Inc. v. Omega Travel, Inc.*, 710 F. Supp. 169, 172–73 (E.D.Va.1989), *aff'd*, 905 F.2d 1530 (4th Cir.1990) (unpublished), (citing *Wright v. Jackson*, 522 F.2d 955, 957–58 (4th Cir. 1975)). Mere negligence or carelessness is insufficient to support an award of attorney's fees. *Id.*

## III. DISCUSSION

### A. Civil Contempt

Plaintiff argues that the Court should hold Defendants in civil contempt because Defendants refuse to pay overtime in compliance with the Act and the Court's Order. Pl.'s Resp.

at 4. Additionally, Plaintiff argues that the Court should impose sanctions and attorneys' fees against Defendants for their noncompliance. However, Defendants argue against holding them in civil contempt and imposing sanctions. Defs.' Resp. at 3–4; ECF No. 375. The Court will address each element of civil contempt below.

### 1. Knowledge of Valid Decree

Both parties do not dispute that Defendants had actual and constructive knowledge of the January 14, 2022 Final Judgment and Injunction Order. Counsel for Defendants admitted that Defendants were aware of the Order during the Show Cause hearing. *See* Show Cause Hearing Transcript at 11. Additionally, the DOL and the Court repeatedly made Ms. Lisa Pitts aware of her non-compliance with the FLSA before, during, and after trial. *See* Docket Sheet. The Order's terms were clear and unambiguous. The Order was also clear and unambiguous as to whom it applied, namely Medical Staffing of America, LLC, d/b/a Steadfast Medical Staffing, and Lisa Pitts. Order at 30. Thus, Defendants had knowledge of a valid decree.

### 2. Decree in Movant's Favor

Both parties agree the Court's Order was in the Secretary's favor. The Order enjoined Defendants from committing further violations of the FLSA. Order at 30. Thus, the Order was in the Secretary's favor.

### 3. Violation of the Order

Albeit delayed, Defendants are now in compliance having begun to comply once the Show Cause Order was issued. During the Show Cause Hearing, Defendants counsel stated that Defendants had made efforts to comply with the FLSA. *See* Show Cause Hearing Transcript at 11–12. Defendants stated on February 8, 2022, that they began paying overtime as the law required and informed Plaintiff on July 28, 2022, in their letter about their compliance. Defs.'

Resp. at 2. From January 14, 2022, through February 8, 2022, roughly three weeks, Defendants were not in compliance with the FLSA. During this period, Defendants admitted to not paying overtime to at least one of its employees, Ms. Brandy Hicks. ECF No. 350, Ex. 1.

In addition, Defendants relied on their recent decision to engage an outside auditor as a good faith showing of their ability to comply with the Court's directives moving forward. *See* Show Cause Hearing Transcript at 9. Defendants' auditor analyzed Defendants' payroll records showing Defendants' noncompliance represents 1% of the total compensation paid to the nurses. *See* ECF No. 375, Ex. A at 13. Defendants' auditor stated, "[Defendants] payroll and timekeeping systems are inherently complex based on these factors, but ultimately [Defendants] data contains sufficient and necessary information to properly calculate overtime for all nurses." *Id.* at 14. The auditor's report shows that Defendants attempted to comply with the Court's Order, although there were some issues with the payroll and timekeeping records.

However, prior to the Show Cause Hearing, the Court ordered Plaintiff to update the back wages and liquidated damages calculation, but Defendants repeatedly refused to provide Plaintiff with the requested payroll information to update those figures for the Court. *See* Show Cause Hearing Transcript at 5. Defendants did not provide Plaintiff with their payroll records until March 1, 2023, one day before the Court held the Show Cause Hearing, even though Plaintiff requested these records on July 14, 2022. *See* Show Cause Hearing Transcript at 8. Although the Court notes Defendants delayed compliance throughout this litigation, the Court finds their delayed compliance questionable. *Consolidation Coal Co.*, 683 F.2d at 832 (stating good faith efforts can be a defense even if ineffective).

### 4. Movant Suffered Harm

Plaintiff has established that it has suffered harm because of Defendants' failure to

comply with the order. Defendants' failure to provide payroll records and pay overtime to its employees seriously threatens Plaintiff ability to monitor employers and protect workers. Thus, the Court finds that Plaintiff suffered harm.

Nevertheless, the Court finds the purpose of the Show Cause Order achieved. Additionally, the Court finds it unnecessary to hold Defendants in civil contempt. Although the Court finds Plaintiff arguments for civil contempt compelling, Defendants have now come into compliance, thus rendering it unnecessary for the Court to address sanctions and attorneys' fees. Further, Defendants provided a good-faith defense for delaying compliance with the Court's Order. Therefore, the Court does not find Defendants in civil contempt.

## IV. CONCLUSION

For the reasons stated above, the Show Cause Order is **DISMISSED**. ECF No. 363. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 2 9, 2023

Raymond A. Jackson
United States District Judge